715 So.2d 1114 (1998)
Adam S. RUSSELL, Appellant,
v.
Paula P. GILL, f/k/a Paula P. Russell, Appellee.
No. 97-4427.
District Court of Appeal of Florida, First District.
August 17, 1998.
*1115 John Glassman, of John Glassman, P.A., Pensacola, for Appellant.
Laura E. Keene, of Beroset & Keene, Pensacola, for Appellee.
KAHN, Judge.
Appellant Adam S. Russell appeals from an order denying his Petition for Modification of Child Support and granting the appellee's Motion for Enforcement and Contempt. Mr. Russell raises the following issues on appeal: (1) whether the trial court erred in finding no substantial, material, involuntary or permanent change in circumstances to justify a modification in child support; (2) whether the court erred in interpreting the alimony provision in the settlement agreement; (3) whether the court erred in refusing to give the former husband both children as IRS dependency exemptions; and (4) whether the court erred in requiring the former husband to pay one half of the former wife's attorney's fees. We affirm in part, and reverse in part.
We affirm the trial court's denial of a reduction in child support. The trial court did not abuse its discretion in finding that the former husband's changed circumstances were not substantial, involuntary or permanent.
We must, however, reverse the alimony enforcement ruling. The parties entered a settlement agreement that was drafted by the former wife's attorney. The agreement, as originally drawn, provided:
The Husband shall pay to the Wife as rehabilitative alimony the sum of $800.00 per month, payable monthly for a period of two years, or twenty-four payments, beginning on October 1, 1995, or until the Wife shall become employed earning equal or greater pay. This obligation will not cease if the Wife remarries, but will cease if the Wife dies. The foregoing alimony *1116 shall be taxable to the Wife as income and deductible by the Husband for federal income tax purposes.
(emphasis supplied). The former husband specifically advised the former wife that he would not sign an agreement that stated that he had to continue to pay alimony, if she remarried. Both parties recalled the conversation. At the insistence of the former husband, the former wife, herself, changed the agreement by drawing a line through the sentence that read: "This obligation will not cease if the Wife remarries, but will cease if the Wife dies," and by writing "Delete" above the sentence. Believing that the alimony payments would cease if the former wife remarried, the former husband signed the agreement on December 1, 1995. Paula Russell remarried on August 4, 1996.
The order recites the trial court's reasoning:
The Court finds the parties' Agreement included language relating to alimony as follows: "This obligation will not cease if the Wife remarries, but will cease if the Wife dies." At the Former Husband's request, this language was removed by the parties prior to the signing of the Agreement. What the Former Husband attempted to accomplish by the removal of that sentence he failed to do. The Agreement is silent as to the issue of remarriage and thus must be construed consistent with case law construction in Florida which is that rehabilitative alimony is for a specific purpose and specific length of time and therefore does not terminate upon remarriage absent a specific agreement to the contrary.
As we have noted, the provision for rehabilitative alimony after remarriage was struck through with a line and replaced with the handwritten word "delete". Generally, typed or handwritten portions of a contract that are at variance with or in conflict with printed provisions take precedence and are controlling. Planck v. Traders Diversified, 387 So.2d 440 (Fla. 4th DCA 1980), review denied, 394 So.2d 1153 (Fla.1981); MacIntyre v. Green's Pool Service, 347 So.2d 1081 (Fla. 3d DCA 1977). Here, the manner by which the parties deleted the remarriage provision created a conflict with the provision that otherwise provides for 24 months of rehabilitative alimony. The interlineation technique can leave little doubt that both husband and wife believed that their action would override and supplant the original provision requiring payment of rehabilitative alimony after remarriage. Thus, the parties bargained for a provision that was more favorable to the former husband than was either the case law referenced in the trial court's order, or the provision as originally drafted.
If the interlineation is treated as creating an ambiguity, rather than a conflict, the result is the same. In cases of doubt as to the meaning the parties intended by contract language, the language will ordinarily be interpreted in a light less favorable to the party drafting the contract, which in this case would be the former wife, who both drafted the agreement and accomplished the amendment. See MacIntyre, 347 So.2d at 1083.
A court faced with a contract ambiguity should consider the intent of the parties, as evidenced by their subsequent acts, and the circumstances existing at the time of entering into the contract or the modification. Lang v. Corbitt, 381 So.2d 1190 (Fla. 2d DCA 1980). Here, both parties testified that the former husband refused to sign a Settlement Agreement with a provision for rehabilitative alimony after remarriage. Faced with the former husband's insistence, the former wife drew a line through the provision and wrote "delete" above it. When Mrs. Russell remarried on August 4, 1996, Mr. Russell stopped paying alimony. He testified that his former wife never sent him a letter or inquired about rehabilitative alimony until after he filed his Petition for Modification of Child Support. On February 18, 1997, appellee, for the first time, sought "enforcement" of the alimony provision. The trial court should have considered these circumstances, all of which support appellant's construction of the agreement. The only reasonable construction of the alimony provision, taking into account the rules of construction, leads us to hold that appellee's *1117 entitlement to rehabilitative alimony ceased upon her remarriage.
Relying upon the plain language of the settlement agreement, we must also reverse the order on the issue of the dependency exemption. The order on appeal recites:
The Former Husband has requested the right to claim both of the parties' minor children as federal tax exemptions. The court notes that this matter is addressed by the parties' settlement agreement which provides that each party has the right to claim one of the minor children. As that is the Agreement reached between the parties, the Court enforces that Agreement and denies the Former Husband's request to modify that provision.
The settlement agreement, however, provides in part:
The Husband shall be entitled to declare Meghan E. Russell as a dependent on his federal income tax return and the Wife shall be entitled to declare Brennan S. Russell as a dependent on her federal income tax return. Both Husband and Wife shall continue to claim such respective children as an exemption under their respective income tax returns so long as same is permissible and for so long as they each obtain an actual tax advantage.

(emphasis supplied). A trial court abuses its discretion where it makes an award contrary to a clear and unambiguous settlement agreement. See Bissell v. Bissell, 622 So.2d 532 (Fla. 1st DCA 1993) Here, the trial court's construction overlooked the part of the agreement establishing that the right to the exemption accrues to each party "for so long as they each obtain an actual tax advantage." Mr. Russell submitted his former wife's 1996 joint tax return to prove, without contradiction, that she did not obtain an actual tax advantage from the exemption.
Appellant last questions the requirement that he pay half of appellee's as-yet-undetermined attorney's fees. This issue is not ripe for appellate review. See Trans Atlantic Distributors, L.P. v. Whiland & Co., S.A., 646 So.2d 752 (Fla. 5th DCA 1994); Hobbs v. Hobbs, 518 So.2d 439 (Fla. 1st DCA 1988).
AFFIRMED, in part, REVERSED, in part.
BARFIELD, C.J., and JOANOS, J., concur.